FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACUSETTS

2026 MAY 20 PM 2:28

DISTRICT OF MASS.

| | |
|---|---|
| RR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:26-cv-11389-MJJ |
| | ) |
| NATIONAL CONFERENCE OF BAR | ) |
| EXAMINERS (NCBE), | ) |
| | ) |
| Defendant. | ) |
| | ) |

## INDIVIDUAL REPORT PURSUANT TO FED. R. CIV. P. 26(f)

Pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 16.1, a virtual face-to-face meeting was held on May 4, 2026, and attended by Plaintiff, RR, proceeding pro se, and Robert Burgoyne, counsel for Defendant, National Conference of Bar Examiners (NCBE). With a near complete joint report on May 15, opposing counsel suddenly decided at the very last second to deny a key fact about their conversations. Plaintiff could not in good faith file anything with this Court that did not honestly represent intervening events, including communications with opposing counsel, as well as communications with the Massachusetts Board of Bar Examiners (MBBE) (copying the relevant head clerk at the Massachusetts Supreme Judicial Court (SJC), as she was supposed to do). Plaintiff is extremely disappointed that this left-field denial did not come days sooner, as it would have allowed her to begin the present individual report and devote crucial time to motions that may need to be filed with the SJC and to studying for the Bar Exam and to supplying this Court with exhibits may deem necessary (e.g. the new accommodations grant from Defendant, thanks to the MBBE; the MBBE's confirmation, from the start, of RR's requested and necessary accommodations; the relevant emails with the MBBE and SJC; etc.). *See infra.*

After days of edits and finally agreeing to *all* other pieces of the report, at the very last second,

1

opposing counsel suddenly and inexplicably denied a key detail from their initial discussions that had been in every edited draft of the report up to that point: RR's contact with the MBBE (and SJC) pursuant to their meet-and-confer and discussed via phone shortly thereafter. Solely as a result of opposing counsel's last-minute denial of this fact, the parties could not file what would have otherwise been a complete joint report. Defendant's actions hurt the interests expressed by *both* parties: RR's ability to take the MA July Bar Exam (this desire was repeated multiple times by opposing counsel), which, as counsel is well-aware, now potentially involves filing two motions with the SJC, presenting them first to the SJC Rules Committee via email. Given that Defendant, following the Massachusetts Board of Bar Examiners' (MBBE) grant of her full requested accommodations on the MA Bar Exam, decided to do the same for the *August 2026* administration of the MPRE (i.e. more than a year after RR submitted her application for accommodations on the November 2025 MPRE), which does nothing to rectify its now-conceded unlawful prior denials of her accommodations, and which will merely cause additional delay, further violating Plaintiff's rights under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973.

## I. OVERVIEW OF CASE

Plaintiff graduated from law school in May 2019 but has not yet been licensed to practice. She would like to become licensed in Massachusetts. To do so, she must successfully complete both the MA Bar Examination and the Multistate Professional Responsibility Examination (MPRE), which Defendant develops and administers, including in Massachusetts. MA expressly requires applicants for the bar to have a score of at least 85 on the MPRE. *See SJC Rule 3:01, § 1.1.5.*

Based upon a thoroughly documented history of diagnosed disabilities, within the meaning of both the ADA and Section 504, and of accommodations,[1] she requested the exact accommodations

---

[1] This includes documentation of the accommodations granted Plaintiff for the last decade throughout nearly all of law school (since August 2016) and confirmed by her longtime psychoeducational evaluator's 2019 and 2025 evaluations, the latter of which Plaintiff spent many weeks undergoing last summer (2025).

2

recommended by all her qualified professionals for ten years on the MPRE, which she originally planned to take in November 2025: 100% extended time (double-time), as well as up to 15 minutes of stop-the-clock break time. She took the MPRE on March 25, 2026, after seven months attempting to receive her requested and recommended accommodations from Defendant, and its repeated denials. Defendant has refused throughout the entire period to provide any sensical explanation for its decision, which contradicts its own guidelines (and those of the testing agencies it decided to cite arbitrarily), despite Plaintiff's numerous attempts at the type of "interactive" communication Defendant has demanded of other applicants for accommodations and that is required under the ADA. Defendant approved merely half of Plaintiff's requested, recommended, and, for a decade now, consistently granted and fully used extended time, as well as all stop-the-clock break minutes. *See* Complaint, Doc. No. 1, for details of the reconsideration request process she spent a month preparing last fall, only to have that denied without any explanation, falsely claiming that RR had not submitted any new documentation. Since Defendant continued to deny Plaintiff her necessary accommodations on the MPRE, causing her to cancel the November 2025 MPRE, delay taking the MA Bar Exam, and forcing her to take the March MPRE without her necessary accommodations, Plaintiff immediately decided to bring this lawsuit against Defendant after its February denial of her last appeal.

Plaintiff's Complaint (Doc. No. 1) alleges that Defendant violated Title III of the ADA and Section 504 in multiple ways and on multiple occasions, especially its repeated denials of her accommodations. Defendant has answered (Doc. No. 17), denying that it violated the ADA, denying that the Rehabilitation Act applies to Defendant, and denying that its actions would have violated the Rehabilitation Act if it were applicable to Defendant. Plaintiff first applied in July 2025 for accommodations on the November 2025 MPRE and then twice appealed Defendant's denial through fruitless internal procedures that RR quickly realized were not being treated with any level of seriousness (the first appeal was a "reconsideration request"). Defendant denied reconsideration in October 2025 and Plaintiff's last appeal in February 2026. Plaintiff was left with no recourse but to

3

bring this lawsuit against Defendant to vindicate her rights as a person with disabilities entitled to the accommodations Defendant has finally granted her via letter, all thanks to the MBBE's adherence to the law and grant of her full requested accommodations, based on the exact same underlying documentation supplied to defendant (Defendant's letter came within two days of sending the MBBE's confirmation letter to opposing counsel, who had told Plaintiff that Defendant would very likely do exactly what it did). That letter is an implicit concession of multiple violations of the law, especially Title III of the ADA. Defendant has not amended its answer since its sudden decision that should have been made nearly a year ago to grant Plaintiff her full requested, recommended accommodations on the MPRE. Instead, it failed to do so on three separate occasions, already causing RR irreversible harm, continuing that harm by refusing to readminister the MPRE before the MA July Bar Exam, and risking imminent and far more severe harm to Plaintiff if she is unable to sit for the July Bar Exam. Opposing counsel has repeatedly stated that he wants Plaintiff to take the July Bar Exam, and Plaintiff of course wants the same.

## II. RELEVANT FACTS SINCE COMPLAINT FILING

The following parts describes key intervening events, since Plaintiff brought this action on March 23, 2026. Opposing counsel actually deleted the majority of the contents of what is now Plaintiff's individual report because she kindly told counsel that he could remove *extraneous* details when sending her first round of substantial additions and edits. Instead, opposing counsel deleted almost every single sentence she added to the initial draft sent to her, in an apparent attempt to take advantage of her pro status. That is not cooperative or productive conduct, and Plaintiff does not appreciate counsel behaving in a way that prevented what should have been a jointly filed report.

### A. March 2026 MPRE

This Court denied Plaintiff's motion for an ex parte temporary restraining order, or, in the alternative, expedited preliminary injunctive relief, which specifically requested that Defendant be ordered to provide Plaintiff with her full requested accommodations on the March 25 MPRE. (Doc. 6).

4

Plaintiff sat for the MPRE with the far insufficient accommodations given by Defendant, barely had a chance to fill in all the bubbles, and received a score of 84, one point short of the SJC's requisite passing score of 85 to sit for the MA Bar Exam (her score was confirmed by hand).

## B. Meet-and-Confer and Subsequent Communications

In discussions between Plaintiff and counsel for Defendant, it was expressed that if the MBBE had, in fact, granted Plaintiff her legally-entitled, highly documented accommodations on the Bar Exam, as the MBBE correctly at the end of April, Defendant would likely do the same. However, since Massachusetts requires petitioners for admission to the bar to achieve a passing score *prior* to sitting for the Bar Exam, at this juncture, Plaintiff cannot sit for the July administration of the MA Bar Exam because the next regularly scheduled MPRE administration occurs in August, and Defendant appears unwilling to take any true corrective action of its very obvious legal violations. Within two days of Plaintiff providing the letter of confirmation from the MBBE of her 100% extended time and maximum allowed stop-the-clock break time on the Bar Exam, Defendant provided her with a letter that it would be giving her precisely the accommodations she had been demanding for nearly a year on the MPRE but only at the next official administration of the exam, which is in August and does not help resolve anything whatsoever, least of all Defendant's misconduct.

**Plaintiff identified two possible courses of action ("Option 1" and "Option 2") as steps towards a resolution of at least her ADA claim to counsel for Defendant in their May 4 meet-and-confer:**

(1) Defendant lawfully re-administer the MPRE *before* the Bar Exam, after repeatedly failing to do so, and allow her to take the MPRE with her necessary accommodations, which it has granted for August (and presumably pass); or

(2) Plaintiff contact the MBBE to see if it could suggest any possible next steps and to propose, specifically, that her July Bar Exam scores be withheld until after the August administration of the MPRE. Since counsel for Defendant stated it would not want to readminister the MPRE to

5

just "one single person," Plaintiff reached out to the MBBE (along with appropriate SJC personnel), as discussed with opposing counsel, and was informed the day before her petition for admission to the bar would have been due (May 8, 2026) that she was not allowed to submit it because of her 84 score on the MPRE, even if accompanied by a special request or motion. She has now been instructed, assuming there is no alternative course of action or ruling by this Court, to present her motion to waive SJC Rule 3:01 § 1.1.5 (regarding the requisite MPRE score). The Rules Committee will then review the motion in accordance with the SJC's schedule. *Only if* that first motion is allowed, may Plaintiff then submit a motion to file her petition to the MA Bar after the deadline and await a second ruling.

Counsel for Defendant now denies ever "agreeing" to RR's communicating with the MBBE, despite that topic constituting the bulk of their discussion at the May 54 meet-and-confer and their subsequent phone call, and despite that detail being in every edited draft of the joint report (never saying anything before the 11th hour). In fact, opposing counsel even recommended additional wording for Plaintiff's email to the MBBE concerning possible steps in general, which Plaintiff included in said email.

Furthermore, Plaintiff explicitly recounted the relevant part of the meet-and-confer in her email to the MBBE (with the SJC clerk CC'ed) following that meeting. She would never have represented that initial meet-and-confer in any way other than the way it occurred. She would also never violate her ethical duties, reflected in the SJC's rules which already bind RR as a candidate for the MA Bar. Not only would Plaintiff never lie about or misrepresent facts about ongoing litigation to the MBBE and SJC (or to anyone else), but Plaintiff would never have sent that email at all had opposing counsel not agreed to that idea after immediately shooting down "Option 1." Because of this denial and wasted time it caused, Plaintiff now insists that Defendant undertake "Option 1" (see Settlement Demand below).

Plaintiff was the only one at the meet-and-confer who had even contemplated possible steps towards a partial resolution. She was also the only party familiar with the full case, including key

6

points from her motions filed in March. Opposing counsel acknowledged not having looked at the exhibits but also misstated several details of the case on May 4 that were very obvious in the main filings and which Plaintiff corrected on the spot. For example, counsel made a rude remark about having accommodations recommendations from just "one qualified professional" when counsel absolutely should have known that RR has had 100% extended time (double-time) for a decade on all tests (along with other environmental accommodations, which are parallelled by the short amount of stop-the-clock time requested on the MPRE), that RR had those accommodations nearly every semester of law school, that RR had the consensus of *numerous* qualified professionals (within the meaning of the ADA) as to the need for the accommodations she has used the last 10 years, and finally, that RR's psychoeducational evaluator (presumably, the "one qualified professional" referenced by counsel) has been her evaluator since 2014 leading up to the LSATs and changed her recommendations in 2019, based, as always, on an exhaustive and exhausting battery of tests.

Plaintiff amenably and graciously proposed "Option 2" (after opposing counsel laughed off "Option 1"), despite the onerous SJC motions, particularly, the motion to waive its own rule regarding MPRE score requirements before sitting for the Bar Exam. At this juncture, following opposing counsel's conduct surrounding the joint report, combined with Defendant's sudden letter granting RR's full requested accommodations (without explanation as to anything previously done) on the next official administration of the MPRE, which Plaintiff was very clear with opposing counsel would do nothing to rectify what Defendant has now conceded were its unlawful denials of RR's accommodations. She will not waste this Court's time explaining why Defendant's statement in its letter that it conducted a "*further* review" (emphasis added) of documentation it has had for nearly a year in under 48 hours, directly after receiving MBBE's letter, is ludicrous and offensive. No legally valid or logical explanation was ever given for Defendant's three repeated denials of RR's accommodations since August 2025. The letter clearly reflects just how unreasonable Defendant's prior conduct has been (e.g. failing to engage in the requisite individualized assessments, among other

7

bad acts). Significantly, the letter and the context in which it was sent to RR also indisputably highlight the egregiously unreasonable nature of the multiple delays caused RR, which are, in and of themselves, additional violations of the ADA, particularly in combination with what blatantly amounted to expensive, time-consuming requests for unnecessary documentation (a testing entity cannot, for example, as Defendant did here, require an intensive, financially and energy-draining psychoeducational evaluation and then refuse to even read it, or any other current/recent documentation submitted by Plaintiff, contradicting its own guidelines, found in Plaintiff's filed exhibits).

Plaintiff still needs to finish the first of the two motions to present to the SJC Rules Committee but is still amenable to settlement, as laid out herein and especially after the breakdown of the joint report when everything had finally been nailed down. Of course, if Plaintiff were readministered the MPRE with what Defendant has now decided should be her accommodations, and should have decided that all along, without the help of the MBBE, and scored at least an 85, RR would only need to file the deadline extension motion, rather than go through the process of a lengthy motion arguing that the SJC should waive its own rule on account of Defendant's actions.

Plaintiff will still present that first motion to the SJC Rules Committee (requesting waiver of SJC Rule 3:01, § 1.1.5) as soon as possible, assuming this Court does not rule on her preliminary injunction motion previously filed, and assuming Defendant rejects her settlement demand entirely. However, the decision regarding any motions related to SJC rules is entirely within the discretion of that court and is not guaranteed. That single detail (Defendant's 11th-hour denial of a paramount fact) was the one and only detail that prevented the parties from filing a joint report that Plaintiff spent hours editing (only to have opposing counsel repeatedly delete her positions while keeping Defendant's in), causing totally needless delays that are in neither party's interest.

The action against Defendant currently hinges on several factors: whether Defendant is amenable to settlement; this Court's consideration of Plaintiff's preliminary injunction motion; and,

regardless of anything else, the SJC's consideration of the matter (RR will have to file a motion to extend the deadline to petition for admission to the MA Bar, as the deadline was May 8, 2026.

Plaintiff asks this Court to take into consideration all intervening events and all actions of Defendant in determining whether to rule on her motion for preliminary injunction and order Defendant to readminister the MPRE ahead of the MA July Bar Exam. Defendant's actions, and Defendant's actions alone, which it has now effectively conceded were unlawful in its recent letter granting RR's full requested accommodations, all because the MBBE did so, caused the situation at hand.

## C. Unsuccessful Attempts to File Joint Report

After repeated concessions to opposing counsel (who deleted nearly every single one of Plaintiff's initial additions to their preliminary joint report draft), due solely to opposing counsel's last-minute denial of having ever "agreed" to her contacting the MBBE, what would have been a complete joint report could not be filed. Why opposing counsel decided after days of editing, at the very last second, to rewrite history, causing an immediate impasse that had not existed up until that point, is beyond Plaintiff.

Because of this eleventh hour denial of the content the parties' communications, RR could not in good faith agree to the joint report she had spent days revising with opposing counsel, who knew she was trying to work on the first motion for the SJC, as they had discussed the outcome of her contacting the MBBE after the meet-and-confer when counsel agreed to the idea and noted that it was a good one.

## III. MAGISTRATE JUDGE

The parties do not consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

## IV. INITIAL DISCLOSURES

The parties plan to make initial disclosures by June 4, 2026, assuming Defendant's refusal of the settlement detailed below, and assuming the Court has not ordered otherwise or made a ruling on

9

Plaintiff's preliminary injunction motion (Doc. 6).

## V. SETTLEMENT DEMAND

Plaintiff requests that Defendant promptly **respond to this formal settlement by the end of the day Friday, May 22,** as the following Monday is a holiday, **time is of the absolute essence**, and opposing counsel has had ample time (three weeks) to relay the basic content of what is now her settlement demand to Defendant.

Since counsel for Defendant is now denying ever having agreed to Plaintiff contacting the MBBE ("Option 2"), despite that being the primary topic of discussion at both the May 4 meet-and-confer and in the subsequent phone call with counsel, Plaintiff is re-proposing "Option 1," which she strongly feels Defendant should undertake after its unlawful denials of her accommodations and bizarre grant of those denied accommodations because of the MBBE's decision. It is totally unclear to Plaintiff why opposing counsel is not honestly representing the most key component of the meet-and-confer. Counsel has had ample time to relay these options to Defendant, including since the 11th hour denial of a substantive piece of the initial discussions with Plaintiff.

Given opposing counsel's sudden last-second denial of what, in fact, took place, the resulting breakdown of what was otherwise a final and complete joint report, and the additional delays involved, Plaintiff is now demanding "Option 1" for settlement, as set forth herein, and which was raised at the meet-and-confer. She is also demanding would amount to minimal damages under both Title III of the ADA and Section 504 of the Rehabilitation Act of 1973 for Defendant's multiple legal violations and the irreparable harms its actions have already caused RR. Specifically, RR demands that Defendant:

1. **Lawfully re-administer the MPRE *before* the July MA Bar Exam with the accommodations it has now suddenly decided, after a year's delay, to grant RR,** who has spent the vast majority of the past year dealing with Defendant and trying to receive basic answers about their repeated denials, as Defendant was legally obligated to provide (and failed

10

to do, constituting multiple violations of the ADA). Specifically, **unless given an extension by the MBBE, Plaintiff demands that Defendant readminister and score the MPRE by June 5**, the deadline for RR to sign the MBBE's affidavit declaring her intent to use her requested and fully granted accommodations on the July Bar Exam. However, **if the MBBE is able to extend that deadline without necessitating a (third) motion from Plaintiff, Defendant must readminister and score the MPRE by June 10, the day before the registration deadline for the August MPRE.** Defendant has already had plenty of time to do exactly that. Any claim of "burden" to it by administering the MPRE early to Plaintiff, whose rights it violated over and over and over again, would be outrageous next to the burdens it has already caused her for almost a year, continues to cause, and will most certainly cause if she cannot take the Bar Exam until February 2027.

2. **Pay what amount to minimal, identifiable damages to Plaintiff, specifically, reimbursements for imposing unnecessary costs (documented in invoices/bills), directly resulting from Defendant's unlawful acts:**

   a. **NCBE's required but effectively unnecessary summer 2025 psychoeducational evaluation/tests, amounting to an illegal surcharge and discrimination under Title III of the ADA;**

   b. **All MPRE-specific fees, including:**

      i. the unreimbursed half-fee from RR's cancelled November 2025 exam,

      ii. the full fee from the March 2026 MPRE (which she was forced to take under discriminatory conditions, as reflected in Defendant's far-past-11th-hour full accommodations grant for the August 2026 MPRE, just like the BBE did on its first try and as Defendant should have done in August 2025), and

      iii. the next MPRE registration fee; and

   c. **All court-related costs.**

This settlement would resolve *both* of Plaintiff's claims and end the case. Lawful re-administration of the MPRE, which Defendant has zero excuse not to have lawfully administered in November 2025, would resolve Plaintiff's first claim under Title III of the ADA, despite the availability of damages under Title III in this case; however, Defendant's inexcusable actions, constituting *numerous* separate violations of the ADA and embodied in its recent letter granting her full requested accommodations (all thanks to the MBBE's adherence to the law), have caused Plaintiff such immeasurable and irreparable harm at this point that she fully merits the very specific damages demanded, which Defendant can easily afford. Refusal of this settlement demand all together will force RR to manage motions to the SJC on top of studying for the MA Bar Exam, jeopardizing her ability to succeed on the exam, even if the SJC allows some form of waiver of its MPRE score requirement and allows a late petition to the bar. Moreover, the August administration of the MPRE occurs directly following the July Bar Exam.

Counsel for Defendant repeatedly expressed the desire to have Plaintiff take and pass the Bar Exam in July 2026, and RR should not have to bear the burden of making sure that happens by filing motions with the SJC while also trying to study for the Bar Exam and continuing the present case in federal court. Of course, if RR is forced to proceed with the motions to the SJC, Defendant risks an unfavorable ruling from the SJC (i.e. one that denies RR's ability to sit for the July Bar Exam), which would render the motion(s) to the SJC, and the time spent studying a waste, resulting in an even longer delay to Plaintiff taking the Bar Exam and enter her chosen profession, adding yet another violation of the ADA by Defendant to the mountain it has already created. Plaintiff would also incur further, even greater financial burdens. Plaintiff will seek all available redress if she is forced to wait until February 2027 to take the Bar Exam, which, had Defendant conducted itself in accordance with its legal obligations and Plaintiff's civil rights, she would have taken in February 2026. No redress, however, will *ever* compensate for what would then amount to a more than 18-month process, starting with her summer 2025 psychoeducational evaluation and accommodations application for the MPRE.

12

If the SJC denies those motions, the inevitable, irreparable, and excruciating harm that will befall Plaintiff will be due entirely to Defendant's repeated failures to comply with its relevant legal obligations, not the SJC's refusal to clean up Defendant's bad acts for it. Defendant's insultingly late grant of her full requested, recommended, and documented accommodations for the August administration of the MPRE does absolutely nothing to rectify the ongoing injury to Plaintiff, nor the imminent, enormous harm it will be solely responsible for if she is not able to take the MA July Bar Exam.

Defendant has being totally insensitive to the enormous amount of work required by Plaintiff for "Option 2," which she would obviously not have even begun were it not for her conciliatory approach to the meet-and-confer and opposing counsel's agreement with that course of action, after immediately telling her that Defendant would not go for "Option 1" and do a re-administration "for one single person." Unfortunately, Defendant repeatedly broke the law and did so in numerous ways, amounting to numerous instances of discrimination, all separate violations of this one single person's rights. Defendant has plentiful financial resources to carry out that re-administration (which it outsources to Pearson Vue, anyway), which would relieve at least some of the ongoing harm to Plaintiff that Defendant precipitated with its own unlawful actions. RR needs to study for the Bar Exam at this point and actually put in the time ahead of the May 4 meet-and-confer to brainstorm and propose next steps towards at least a partial resolution. Ultimately, settlement is up to Defendant, but if Defendant refuses, Plaintiff urges the Court to rule on her March 23 motion, which the Court can now treat as a regular motion for preliminary injunction. As already discussed, the Court need not and should not entertain any explanation by Defendant for its unlawful accommodations denials, other than the illogical, inexplicable, and outrageous ones given to RR (in the exhibits already filed with Court), since doing so would constitute another ADA violation by Defendant. Defendant completely failed to engage in any sort of productive interaction with RR when she requested a detailed explanation for its continued denials. Ironically, Defendant has complained of exactly this failure on

the part of other accommodations applicants in the past. Then again, its own guidance on accommodations documentation apparently only applies to applicants, not itself (especially the repeated requirement that "documentation must be current"). Twelve to twenty years ago is hardly current. As shown in the exhibits filed on March 23, Defendant has been in possession of each current/recent document Plaintiff submitted to it, as confirmed after she sent Defendant an email clearly listing each of those documents, along with a brief descriptions for Defendant's convenience.

## VI. VENUE AND JURISDICTION

There are no contested issues related to venue or jurisdiction.

## VII. MOTIONS

The Court has yet to rule on Plaintiff's motion for injunctive relief, filed March 23 with her complaint and all other relevant motions, affidavits, and exhibits. Given the timing, if the Court decided not to grant an ex parte temporary restraining order, RR already requested expedited preliminary injunctive relief by ordering Defendant to administer the MPRE to RR lawfully on a date to be set by the Court after Defendant had an opportunity to answer, which it has done. After providing Defendant with proof of the MBBE's lawful determination to grant RR's full requested accommodations, it immediately did the same, as opposing counsel said it would if RR sent the MBBE's confirmation later.

### A. Preliminary Injunction Motion

While Plaintiff never specifically told Defendant on May 4 or at any other point that she would be filing an *additional* motion for preliminary injunction (unless required by the Court), she was very clear that the previously filed motion and corresponding first claim under Title III of the ADA were still very much alive and that any resolution, regardless of the deciding body, that did not allow her to sit for the MA July Bar Exam would be unacceptable. Since opposing counsel immediately shot down "Option 1" at the meet-and-confer, the parties agreed that Plaintiff would contact the MBBE about possible steps to take, including proposing the withholding of her Bar Exam

14

scores until after the MPRE. RR has not yet filed the first motion with the SJC, a very difficult motion thanks to the unbelievably awkward posture of the matter (asking the SJC to step-in and remedy Defendant's unlawful actions vis-à-vis the MPRE by changing its own jurisdictional rules for the MA Bar Exam). Given opposing counsel's recent conduct, Defendant's letter that effectively concedes the unlawfulness of its prior accommodations denials, combined with her need to now to study for the Bar Exam, Defendant claims it wants her to take, Plaintiff now hopes that she will not have to file what would be a very involved motion requesting the SJC to waive the rule requiring a minimum score of 85 on the MPRE to sit for the Bar Exam in MA. Instead, she hopes Defendant will agree to the settlement demand, at least with respect to the lawful administration of its exam, which it has repeatedly failed to do, repeatedly violating the law. No other conclusion can be drawn from the existence and context of Defendant's new letter.

As with many other cases brough under Title III of the ADA against a testing agency, Defendant cannot now proffer a "better" explanation for its illegal acts than the illogical ones provided RR, because any such explanation needed to have been given her from the start of this entire process, especially after she attempted to receive a detailed explanation, which Defendant was required under the law to give. Defendant also needed to engage in an interactive process with Plaintiff, as it has expected of past accommodations applications, and needed to afford her a *true* opportunity to "appeal" Defendant's unsubstantiated denials by internal means, which proved expensive, time-consuming, and ultimately an insulting exercise in futility, as demonstrated by NCBE's October letter denying reconsideration, claiming there were no new documents, which the Court can see is factually untrue from the exhibits Plaintiff filed in March. Any "new" explanation by Defendant, other than those previously provided to RR, of its repeated unlawful accommodations denials constitute admission of additional violations of Title III of the ADA.

Opposing counsel was adamant that Defendant wants Plaintiff to be able to take the July MA Bar Exam, but Defendant has done nothing to further that goal. It is perfectly aware that granting RR's

full necessary accommodations on the August MPRE does not allow her to sit for the MA July Bar Exam, that its actions up to this point have already delayed her ability to take both exams, and that the insufficient accommodations it illogically chose for her prevented her from demonstrating her true aptitude on the March MPRE (and constitutes discrimination by forcing her to take the exam under those conditions). Defendant is also aware of MA's jurisdictional requirements of bar applicants and that its actions up until the aforementioned grant letter will then be *the* cause of another 7 MONTH DELAY of Plaintiff's ability to sit for the MA Bar Exam (overall, a full year's delay of that exam). Such extensive and unreasonable delays in the granting of necessary and *reasonable* accommodations are, in and of themselves, violations of Title III of the ADA. Moreover, regulations and guidance on the ADA reiterate the warning that such delays combined with requests for unnecessary disabilities documentation (certainly the case here, as evidenced by Defendant's irrational explanations and refusal to even mention any current or recent document) could result in particularly egregious discrimination under Title III. Defendant is risking adding more violations of the ADA (and Section 504) on top of its existing violations and certainly jeopardizing the expressed common goal that Plaintiff take the MA July Bar Exam.

If Defendant refuses Plaintiff's above settlement demand, Plaintiff requests that the Court rule as soon as possible on her motion for preliminary injunctive relief corresponding to her first claim under Title III of the ADA. Specifically, Plaintiff urges the Court to order Defendant to readminister the MPRE to RR *before* the July Bar Exam (if necessary, by June 5, and at the latest, by June 10) with RR's newly granted accommodations, as that grant shows she was forced to take the March MPRE under discriminatory conditions after Defendant's discriminatory acts caused her to cancel the November 2025 MPRE in the hope that a reasonable, unbiased person or persons would undertake her final appeal. On that note, Plaintiff could not even get confirmation from Defendant that the author of the despicable and per se discriminatory email (included in RR's exhibits), sent in October 2025 in response to RR's request for a detailed explanation of Defendant's reconsideration denial, would not

16

be involved in the final appeal. Plaintiff has no idea whatsoever how Defendant came to its determination/denials of her accommodations, nor how it comes to any accommodations decision, but she finds it particularly disturbing that Defendant would not confirm the non-involvement in Plaintiff's appeal of the author of that email. Finally, receiving her requested, recommended, and extensively documented (currently and recently) accommodations nearly a year after her initial application, and only for the next official administration of the MPRE, which is not under August, does nothing at all to mitigate the ongoing and imminently severe harm to Plaintiff of not being able to take the July 2026 Bar Exam. That exam has already been delayed due to Defendant's unlawful denials of RR's accommodations on the November 2025 MPRE. While this motion is no longer an ex parte motion for a temporary restraining order, this issue still necessitates expeditious resolution if Defendant will not correct what it has effectively conceded were its unlawful prior denials of RR's full accommodations on the MPRE, all acts of discrimination.

Plaintiff also contends that the Court now has all relevant information for it to rule on her motion for preliminary injunction by ordering Defendant to administer the MPRE in accordance with the law and its delayed grant of her necessary accommodations *before* the MA July Bar. That this is an issue at all is a result of Defendant's unlawful acts. Defendant broke the law, violated Plaintiff's rights, and should be held accountable. Should an evidentiary hearing be held and discovery need to take place, Plaintiff requests that dates for relevant discovery and disclosure of witnesses be included in the Court's briefing schedule.

## B. Motions to Proceed Anonymously and to File Documents under Seal

On March 23, 2026, Plaintiff filed a Motion for Leave to Proceed Under a Pseudonym (Doc. No. 2) and a Motion for Leave of Court to File Certain Exhibits Under Seal (Doc. No. 4). Both motions were granted by this Court and should be left undisturbed. Doing otherwise would injure an already injured Plaintiff. Those grants were not temporary, as opposing counsel tried to represent to Plaintiff and should not be changed.

17

Plaintiff disagrees with Defendant's contention that motion practice should occur regarding either her anonymity or specifically identified sealings (both full and redacted). Plaintiff contends that the action falls within the narrow exceptions to the usual presumption of public availability of party names as propounded by the First Circuit in *Doe v. Massachusetts Inst. of Technology*, 46 F.4th 61 (1st Cir. 2022). Furthermore, at this early stage in the case, nothing has changed that requires the Court to reevaluate those orders. There is nothing costly or cumbersome to Defendant by leaving in place the current orders to allow those motions. On the contrary, revisiting and ordering anything otherwise would, in all likelihood, severely harm Plaintiff, humiliating her and potentially causing future discrimination in a profession the central gatekeeper of which is Defendant—a repeat offender when it comes to disabilities rights.

Plaintiff further disagrees that the sealing of medical and sensitive school records that would otherwise be privileged and extremely private, presents any undue burden to Defendant, and contends, again, at this early stage of the case, that there is no need to disturb this Court's prior orders. Plaintiff had been trying to work on the first motion to the SJC, in cooperation with Defendant, as they jointly determined on May 4. This Court has already allowed Plaintiff to seal medical and sensitive educational records and to redact other sensitive records, the publicity of which would only harm her further. Moreover, all documents that have been ordered fully sealed or redacted were already provided to Defendant during Plaintiff's application for accommodations and subsequent reconsideration request, or are communications with Defendant, and constitute the vast majority of the exhibits. Plaintiff believes that Defendant's opposition to these two motions, which it knows are crucial to her privacy and emotional wellbeing, are thinly veiled attempts to intimidate and humiliate.

Finally, Defendant never brought up its plan to oppose Plaintiff's motions to proceed under pseudonym and to seal before sending a preliminary draft of the joint report to Plaintiff, as they should have done at the meet-and-confer. Plaintiff still worked to come to what should be the document filed last week in this Court. As stated above, though, it was already evident to RR that counsel did not

18

come to the meet-and-confer having adequately reviewed the central filings in the case, i.e. the complaint, motions, and accompanying memorandum and/or affidavits, much less the extensive exhibits (again, opposing counsel stated that they had not examined the exhibits at that point in time, but they also did not seem to know the most basic, key details of the filings).

## VIII. DISCOVERY PROCEDURES

The parties have agreed to produce as PDFs all non-privileged records that are part of discovery and which are in electronic format. They have also agreed that any records currently in paper format may be produced in either paper format or as PDFs, at the election of producing party.

The parties have agreed that any motion relating to discovery must be filed prior to the expiration of the discovery period to be established by the Court. The parties do not believe that *phased* discovery is needed to enable the parties to make a realistic assessment of the case. Plaintiff again urges the Court to rule on her first claim and motion for preliminary injunction by ordering Defendant to lawfully readminister the MPRE in accordance with its new letter finally granting her full necessary accommodations, conveniently only *after* the March MPRE upon receipt of the MBBE's letter granting RR her full accommodations on the Bar Exam (no objections or further inquiries were made by the MBBE, which followed the law). A proposed discovery schedule is included in the proposed pretrial schedule set forth below.

The majority of the dates below, after the June 12 deadlines, cannot be determined with precision at this time for reasons described above, including Defendant's reply to RR's settlement demand and, if Defendant rejects the entire settlement, a ruling by this Court or two separate rulings by the SJC, which will involve more intensive work on Plaintiff's part because Defendant decided to shirk its legal obligations and saddle Plaintiff with correcting its unlawful conduct. The SJC, as Defendant knows, rarely waives a subsection of Rule 3:01, § 1.1. Even if the first motion is granted, Plaintiff must then file a motion to extend the deadline for submitting her petition for admission to the MA Bar. Neither party knows how long these processes will take, although **Defendant is still able to**

**administer the MPRE *before* the July Bar Exam with the accommodations it has now finally granted Plaintiff** after almost a year of denying them. Instead, as of this moment, Plaintiff must complete and present at least one motion to the SJC Rules Committee for the SJC's consideration, and it is not a given that there will be a final decision on the first motion or second (if the first is allowed) before it is too late to submit her petition to the bar. And Plaintiff does not know what the SJC and MBBE would deem as "too late" in what appears to be a new situation for the SJC.

## PROPOSED PRETRIAL SCHEDULE

| | |
|---|---|
| Deadline for moving to amend pleadings: | **June 12, 2026** |
| Deadline for moving to join additional parties: | **June 12, 2026** |
| Cut-off for serving & complying with written fact discovery: | **August 17, 2026** |
| Cut-off for completing fact depositions: | **September 11, 2026** |
| Due date for Plaintiff's expert report(s): | **October 9, 2026** |
| Due date for Defendant's expert report(s): | **November 9, 2026** |
| Cut-off for completing expert depositions: | **December 11, 2026** |
| Deadline for filing dispositive motions: | **January 6, 2027** |
| Settlement Conference: | **January 8, 2027** |
| Case Management Conferences: | **As needed** |
| Final Pretrial Conference: | **February 19, 2027** |
| Deadlines for motions *in limine*: | **February 26, 2027** |
| Trial: | **March 2027** |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing report was filed with the Court in-person on May 20 (along with a motion to request permission to file electronically, which she cannot currently do). In addition, a copy of this report has been sent via email to Counsel for Defendant:

Robert A. Burgoyne, rburgoyne@perkinscoie.com
Thomas J. Tobin, ttobin@perkinscoie.com

Dated: May 20, 2026

Respectfully submitted,

*RR*

RR,
*Plaintiff Pro Se*

*[For all contact information, see Plaintiff's Affidavit for Clerk and Defendant of True Identity. NOTE: RR's physical address will change by June 18, 2026. She will promptly notify the Court and Defendant of said change when finalized.]*